```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

ELAINE CHAO, Secretary of Labor,
United States Department of Labor,

                        Plaintiff,          01-CV-6356T
                                              **DECISION**
                                              **and ORDER**

        v.

EMERALD CAPITAL MANAGEMENT, LTD.,
a Corporation, and WILLIAM ROBERT
GOODHUE, Individually and as President,

                        Defendants.
_____

INTRODUCTION

Plaintiff Elaine Chao, the Secretary of Labor for the United States Department of Labor("Department of Labor" or "DOL"), brings this action against Defendants Emerald Capital Management, Ltd., a now defunct investment company,[1] and William Robert Goodhue ("Goodhue" or "defendant") the former president of Emerald Capital and an investment advisor and benefit-plan manager, claiming that the defendants violated the Employee Retirement Security Act of 1974, ("ERISA") codified at 29 U.S.C. § 1001 et seq., by engaging in excessive trading of plan assets to the detriment of the plans which they managed.  Specifically, plaintiff alleges that Goodhue engaged in excessive trading of assets in an effort to receive financial benefits from Merrill Lynch, the company through which

---

[1] Emerald Capital Management has not answered or otherwise appeared in this action.

the trades were executed, which provided benefits to Goodhue based on the number of trades he ordered.

Defendant denies the plaintiff's allegations, and moves for summary judgment on grounds that the statute of limitations in this case expired prior to the filing of the plaintiff's complaint. Specifically, the defendant contends that the statute of limitations in this case expired three years after the plaintiff acquired actual knowledge of the defendant's alleged unlawful trading, which knowledge Goodhue claims was acquired by the DOL on or about April 18, 1998. Defendant therefore claims that the Complaint, which was filed on July 20, 2001, was untimely by more than three months.

The DOL denies that it had actual knowledge of Goodhue's alleged excessive trading in 1998, and instead argues that it did not acquire actual knowledge of the alleged excessive trading until January, 2001. The DOL contends that because it did not have actual knowledge of the alleged ERISA violations until January, 2001 its Complaint filed in July 2001, is timely.

For the reasons set forth below, I find that the Department of Labor had actual knowledge of the facts giving rise to a claim for excessive trading against the defendants on or before April 17, 1998, and accordingly, the Complaint filed in this action is untimely. I therefore grant defendant's motion for summary judgment and dismiss plaintiff's Complaint with prejudice.

BACKGROUND

Defendant William Goodhue is a private asset and investment manager, and was the President of Emerald Capital Management, Ltd., a now defunct asset management firm. Prior to forming Emerald Capital and serving as its President, Goodhue worked for Merrill Lynch. As an investment manager at Emerald Capital, Goodhue managed benefit plans for several clients including an ERISA benefit plan maintained by the Young Insurance Agency ("the Young Agency"). In July 1997, the Department of Labor initiated an investigation of certain ERISA plans held by the Young Agency, and based on its investigation, the DOL determined that plan assets had been traded excessively.

By November, 1997, DOL investigators had learned that William Goodhue, as the President of Emerald Capital, was the investment manager for the Young Agency ERISA Plans during the time of the allegedly excessive trading. By December, 18, 1997, DOL investigators had concluded that Goodhue had directed a "huge" number of trades, and had learned that many stocks had been purchased and resold within a matter of weeks. James Murphy, ("Murphy") the primary investigator of this matter at the time, had also seen information indicating that Goodhue had been participating in a "soft dollar" program with Merrill Lynch whereby Goodhue received a financial benefit from Merrill Lynch for every trade that Goodhue ordered from Merrill Lynch.

Based on information he uncovered during his investigation, Murphy requested trading records from Merrill Lynch for other accounts for which Emerald Capital had acted as the Investment Manager.  On or about April 17, 1998, Merrill Lynch responded to Murphy's request by sending Murphy a list of all accounts for which Emerald Capital had acted as the Investment Manager, and by providing the trading records for all accounts managed by Emerald Capital.  Merrill Lynch also sent documents describing the "soft dollar" program. According to Murphy, the trading records revealed that Emerald Capital had engaged in excessive trading for all of its ERISA plans for which Merrill Lynch served as a broker.

On August 4, 1998, Murphy and another DOL investigator interviewed the defendant regarding his participation in the ERISA plans managed by Emerald Capital.  According to the DOL, the Department confirmed at that meeting that Goodhue was the Investment Manager who had discretionary authority over the funds in those ERISA plans.

The extent of the investigation immediately following the DOL's interview of Goodhue is not clear from the record.  The record does indicate, however, that the investigation was referred to the Pension Welfare Benefits Administration ("PWBA") in Boston for further consideration. On February 24, 2000, the PWBA referred the case to the Solicitor's Office of the Department of Labor for

possible legal action. The PWBA concluded that Goodhue's excessive trading was "a clear violation" of ERISA provisions.

On August 10, 2000 the DOL sent Goodhue a letter offering to delay the initiation of any lawsuit against him in return for his agreement to toll any statute of limitations. At that time, the DOL's internal analysis of the statute of limitations suggested that the limitations period would expire on November 4, 2000. Nevertheless, on August 21, 2000, the DOL attorney assigned to the case wrote that in the event that Goodhue did not sign the tolling agreement, the DOL should not threaten to bring a lawsuit immediately because despite the fact that the DOL "believes and has believed since (probably) September 1997 that the trades violated ERISA . . ." the DOL could argue that it "didn't know" there were ERISA violations because no expert had as of yet offered an opinion on that subject. A second and final statute of limitations analysis was prepared by the DOL on September 7, 2000. According to that analysis, the statute of limitations for claims against Emerald Capital and Goodhue would expire on September 8, 2000 unless the DOL could successfully argue that it did not have knowledge of the ERISA violations because it had not received an opinion from an expert opining that Goodhue had been involved in excessive trading. Goodhue refused to sign the tolling agreement.

At approximately the same time that the DOL had requested that Goodhue enter into a tolling agreement, the Department retained an

outside expert, Richard Ennis ("Ennis") to review Goodhue's trading records and determine whether or not Goodhue had engaged in excessive trading in violation of ERISA. After reviewing the records, Ennis contacted an attorney with the DOL by telephone on January 9, 2001 and opined that Goodhue had engaged in excessive trading with respect to four plans that he had reviewed. Thereafter, on July 20, 2001, the DOL filed the instant complaint.

## DISCUSSION

The Department of Labor contends that the defendant engaged in excessive trading of ERISA plan assets in violation of ERISA. The Statute of limitations for such an action is 6 years from the date of the alleged activity, or, in cases where the plaintiff had actual knowledge of a breach or violation of ERISA laws, within three years of the earliest date on which the plaintiff acquired that knowledge.[2] 29 U.S.C. § 1113.

---

[2] The limitations provisions of ERISA provide as follows:
No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

6

In the instant case, the defendant contends that the DOL acquired knowledge of the alleged ERISA violations no later than April 17, 1998, when the DOL received trading records from Merrill Lynch detailing all of the trades made by Goodhue and Emerald Capital in their capacities as Investment Managers for approximately 17 plans governed by ERISA. The defendant therefore argues that the statute of limitations in this case expired on April 17, 2001, and because the plaintiff did not file its action until July 20, 2001, the action is time barred.

The plaintiff disputes the defendant's characterization of when it acquired knowledge of the alleged violations, and contends that it did not have such knowledge with respect to four of the plans at issue until January 9, 2001–the date on which its retained expert opined that the defendants had engaged in excessive trading with respect to four ERISA plans–and did not have knowledge of the alleged violations with respect to the remaining plans until June, 2001. The DOL therefore contends that its action was timely filed within three years of when it acquired knowledge of the alleged violations.

If, as defendant contends, the DOL acquired actual knowledge of the alleged violations on April 17, 1998, then the Complaint in this case would be time barred by the three-year statute of limitations. In determining whether or not a plaintiff has actual knowledge that an ERISA violation has occurred, the Second Circuit Court of Appeals has held that a party will be deemed to have such knowledge "when he has knowledge of all material facts necessary to

7

understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v Pfizer, Inc., 267 F.3d 181, 193 (2nd Cir. 2001). The Caputo court clarified that to have actual knowledge of the facts supporting an ERISA claim, a plaintiff must have "'specific knowledge of the actual breach of duty upon which [the claim is founded].'" Caputo, 267 F.3d at 193 (quoting Brock v. Nellis, 809 F.2d 753, 755 (11th Cir. 1987). A mere suspicion that "'something [i]s awry'" is insufficient to establish actual knowledge for purposes of the statute of limitations. Caputo, 267 F.3d at 193 (quoting Brock, 809 F.2d at 755. Instead, the level of knowledge sufficient to trigger the three-year limitations period stands "somewhere between [knowing] every last detail [of the alleged violation] and [suspecting that] something [i]s awry." Martin v. Consultants and Administrators, Inc. 966 F.2d 1078, 1086 (7th Cir. 1992); Wright v. Hayne, 349 F.3d 321, 329 (6th Cir 2003). Whether or not a plaintiff has acquired the requisite knowledge is a question best left to the district court Judge, who is to consider the issue on a case by case basis, looking to the specific facts and context of each individual situation. Martin, 966 F.2d at 1086. In determining what facts are relevant to the determination of whether a plaintiff had actual knowledge of an ERISA violation, the Second Circuit has held that "material facts 'could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.'" Caputo, 267 F.3d at 193 (quoting Gluck v Unisys Corp., 960 F.2d 1168, 1177 (3rd Cir. 1992). Significantly, a showing that the

8

plaintiff should have known that an ERISA violation occurred is insufficient to establish that the plaintiff had actual knowledge of such a violation, as a plaintiff's constructive knowledge of a violation is immaterial to the issue of whether the plaintiff had actual knowledge. Caputo, 267 F.3d at 194.

In this case, the parties agree that to have had actual knowledge of the material facts that would have allowed the DOL to understand that an ERISA violation likely occurred, the DOL would have had to have known that: (1) the defendants acted as fiduciaries and had discretion over ERISA benefit plan assets; and (2) the defendants directed excessive trades on behalf of those plans for their own benefit in violation of ERISA.

  I.   The DOL had actual knowledge that defendants acted as Fiduciaries with Discretionary Authority prior to July 20, 1998.

The Department of Labor contends that it did not know that Goodhue and Emerald Capital acted as fiduciaries with discretionary authority over plan assets until August, 1998, when DOL investigators interviewed Goodhue, and Goodhue acknowledged that he did in fact have discretionary authority over ERISA plan assets as a fiduciary. In support of this contention, plaintiff alleges that the defendants could have been mere advisors with no discretionary authority over the funds, and therefore, the DOL could not have had knowledge that the defendants breached their fiduciary obligations until it knew for certain that the defendants were fiduciaries. See Fechter v. Connecticut General Life Ins. Co., 800 F.Supp. 178

9

(E.D. Pa. 1991)("for purposes of ERISA's three-year limitations period, Plaintiffs' actual knowledge of the alleged breach or violation would turn on determination of exactly when the Plaintiffs learned that [the defendant] exercised decision-making authority over the allocation of the Plan's surplus assets . . .")

    I find, however, that the DOL had actual knowledge that the defendants were fiduciaries with respect to the plans in question no later than April 18, 1998, the approximate date on which it received documents from Merrill Lynch in response to a request from the DOL for documents relating to "all ERISA Plans . . . serviced by Merrill Lynch that used Emerald Capital as the <u>Investment Manager</u> after 1/1/94". (emphasis added)  The documents produced by Merrill Lynch demonstrated that Emerald Capital had indeed acted as the Investment Manager for 17 ERISA plans, and therefore, had acted as a fiduciary with respect to those plans.  <u>See</u> Exhibit 10 to the Affidavit of Robert Calihan submitted in support of Defendant's Motion for Summary Judgment (identifying documents produced as "a list of all ERISA accounts that used Emerald Capital as an Investment Manager after 1994).  This is so because under ERISA, an "Investment Manager" of an ERISA plan is by definition a fiduciary such a plan.  ERISA defines, in relevant part, the term "Investment Manager" as "any fiduciary . . . who has the power to manage, acquire, or dispose of any asset of a plan."  29 U.S.C. 1002(38). Accordingly, when the DOL received information from Merrill Lynch about accounts for which the defendants had acted as "Investment

Managers" the DOL acquired actual knowledge that the defendants were fiduciaries for purposes of ERISA.

The DOL contends that the fact that it requested information for plans in which the defendants acted as Investment Managers, and that Merrill Lynch provided information for plans in which the defendants acted as Investment Managers, does not establish that the defendants were fiduciaries, because there is no evidence that either the DOL or Merrill Lynch used the term "Investment Manager" in the context of that term as defined by ERISA. In support of its contention, the DOL suggests that the defendant "might as easily have been a non-discretionary investment advisor as a fiduciary investment manager." I find this explanation, however, implausible and untenable.

The DOL is the chief federal agency charged with enforcing ERISA. Before requesting information from Merrill Lynch in December, 1997, the DOL, based upon its investigation to that date, believed that the defendants had violated ERISA by engaging in excessive trading. See December 18, 1997 Memorandum of James Murphy attached as Exhibit 7 to the Affidavit of Robert Calihan submitted in support of Defendant's Motion for Summary Judgment (identifying Emerald Capital as the former investment manager of several ERISA plans and recommending initiation of investigation into Goodhue and Emerald Capital). Additionally, when it opened its investigations of the defendants' activities with respect to the ERISA plans managed by Emerald, the DOL identified Emerald as the "investment manager" for those plans. In an attempt to verify

11

what it already believed, the DOL requested documents that could verify that the defendants were fiduciaries, and that they engaged in excessive trading. Accordingly, the DOL requested information regarding plans for which the defendants exercised a fiduciary duty. The fact that Merrill Lynch provided such information verified that Goodhue and Emerald acted as fiduciaries.

Moreover, it would not have been rational for the DOL to request documentation for plans in which the defendants <u>did not</u> act as fiduciaries, as the defendants would not have been liable for excessive trading under the statutes set forth in the Complaint absent a fiduciary duty. <u>See</u> 29 U.S.C. § 1104 (setting forth liability of <u>fiduciary</u> for failing to discharge duties for the sole benefit of participants and beneficiaries), 29 U.S.C. § 1106 (establishing liability of <u>fiduciary</u> engaging in prohibited transactions). Accordingly, I find that as of April 18, 1998, the DOL not only had sufficient facts to conclude that the defendants acted as fiduciaries with respect to the plans at issue, but also believed that the defendants were fiduciaries, and therefore had actual knowledge of the fact that the defendants were fiduciaries of the plans at issue with discretion to purchase and sell plan assets.

 II. The Plaintiff had Actual Knowledge that the Defendants had Engaged in Excessive Trading.

The Department of Labor contends that it did not have actual knowledge that the defendants engaged in excessive trading until

12

January, 2001, when it received the opinion of an expert who opined that the defendant's trading was excessive with respect to four of the ERISA plans at issue.  In support of this contention, the DOL relies on the Second Circuit's decision in Caputo (discussed above) which held that a plaintiff must have knowledge of "all material facts necessary to understand that an ERISA fiduciary breached his . . . duty or otherwise violated the law" and that material facts "could include necessary opinions of experts...." Caputo, 267 F.3d at 193. (emphasis added)  The DOL contends that without an expert opinion, it did not and could not know conclusively whether or not the defendants engaged in excessive trading.  Accordingly, the DOL contends that the opinion of its expert was a "necessary opinion" pursuant to Caputo, and therefore, it filed its complaint in a timely manner after receiving the expert's report.

I find, however, that the expert opinion obtained by the DOL was not a necessary opinion for purposes of determining when the DOL had knowledge of all the material facts necessary to understand that the defendants violated their fiduciary duties under ERISA. Initially, it is disingenuous for the Department of Labor to argue that it did not and could not have known that the defendants had engaged in excessive trading absent the opinion of an outside expert.  The Department of Labor is the federal agency charged with implementing ERISA and enforcing that statute on behalf of the government.  Unlike a private plaintiff, who is typically an employee-beneficiary of an employer-sponsored benefit plan, and is often a lay person who does not have any specialized knowledge of

13

ERISA, the DOL is charged with enforcing the statute, and therefore may be held to a higher standard of knowledge regarding the operation of specific ERISA provisions.  Accordingly, where a lay person may need the opinion of an expert to determine whether or not a certain threshold of trading constitutes excessive trading, the Department of Labor, which employs hundreds of investigators and attorneys all of whom are charged with enforcing ERISA, should, in cases where the trading is grossly excessive, be able to determine that such trading is excessive without the assistance of an expert.  While the opinion of an expert may be necessary in a close case where the rate of trading is only marginally higher than the average trading rate, in cases where the trading is substantially excessive, the DOL should be able to recognize such an abuse without the necessity of being informed of the abuse by a consultant reviewing the same data available to the DOL.

In the instant case, the alleged trading engaged in by the defendants was egregiously excessive, and therefore, an opinion to that effect by an outside expert was not a necessary fact for the DOL to have acquired knowledge of all material facts giving rise to an understanding that an ERISA violation had occurred.  According to the information obtained by the DOL as part of its investigation, the annual turnover rate of the assets at issue managed by the defendants was over 1000%.  Compared to the average annual turnover rate of 81.9% for ERISA assets, the transactions were excessive on their face, and accordingly, once the plaintiff

14

obtained the ERISA-plan trading records, the DOL had knowledge of the material facts giving rise to an ERISA claim.

While the court is mindful that in many cases, the mere fact that a transaction took place is, as a matter of law, insufficient to establish its illegality or that it constituted a breach of duty, (see Caputo, 267 F.3d at 193 ("'the disclosure of a transaction that is not inherently a statutory breach of a fiduciary duty . . . cannot communicate the existence of an underlying breach.'")(quoting Fink v. National Savings & Trust Co., 772 F.2d 951, 957 (D.C. Cir., 1985)), in cases where the transaction is facially illegal, awareness of the occurrence of the transaction itself does constitute knowledge of facts necessary to understand that breach of a fiduciary duty occurred. See Brown v. American Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999) (stating in dicta that "if the fiduciary made an illegal investment . . . knowledge of the investment would be actual knowledge of the breach.").

In this case, although each single trading transaction was not facially illegal, when aggregated, the trading was excessive on its face, and therefore the disclosure of the transactions, in toto, provided facts upon which the DOL could understand that an ERISA violation occurred. Moreover, at the time the DOL investigated the allegedly excessive trading, all of the trades had occurred, and therefore the DOL had the benefit of analyzing the trading in retrospect, and could easily have concluded that excessive trading had taken place. Finally, the DOL had information relating to the

15

"soft dollar" program prior to April 18, 1998, and therefore could have understood that the defendants had a financial motivation for engaging in the allegedly excessive trading.

The plaintiff argues however that until its expert told the DOL that the turnover rate of assets managed by the defendants was in excess of 1000%, and that the average turnover rate for ERISA assets was 81.9%, it could not have known that the trading was excessive because it possessed only the raw, uninterpreted data regarding the defendant's trading, and did not possess information on what constituted "normal" or "average" trading. Again however, while the opinion of an expert may be necessary in a close case where the turnover rate is marginally higher than the average turnover rate, this is not a close case. Here, the trading at issue was visibly excessive, and therefore precise knowledge of the average turnover rate for ERISA assets and precise knowledge of the turnover rate for the defendants was not necessary to understand that the defendants had engaged in excessive trading. See Martin, 966 F.2d at 1086 (plaintiff does not need to know "every last detail" of a potential ERISA violation). Indeed, as early as 1997, more than three years before it received the expert report, the DOL believed that the defendants had engaged in excessive trading. See Internal DOL Memo attached as Exhibit 22 to the November 11, 2005 Affidavit of Robert Calihan (Docket no. 73-5)(stating that the Department "believes and has believed since (probably) September 1997 that the trades violated ERISA").     Since the DOL had knowledge both of the excessive trading that occurred and the "soft

16

dollar" program under which the defendants received a financial benefit for engaging in excessive trading as of April 18, 1998, I find that the plaintiff had sufficient knowledge of all necessary facts to understand that an ERISA violation had occurred as of that date. Accordingly, the three-year statute of limitations began to run on that date, and expired in April, 2001, three months prior to the date on which the plaintiff filed the instant action. Because the plaintiff did not file this action within the limitations period, the action is time-barred. In so holding, I express no opinion as to whether or not the DOL can ever delay the running of the three year limitations period by obtaining the opinion of an expert prior to the expiration of the limitations period. I simply hold that in this case, the opinion of an expert was not necessary for the DOL to have understood that an ERISA violation had taken place. See Martin, 966 F.2d at 1086 (whether plaintiff has acquired the requisite knowledge of the existence of an ERISA violation is a question best left to the district court Judge who is to consider the issue on a case by case basis, looking to the specific facts and context of each individual situation). Similarly, I give no weight to the fact that internal documents indicated that the DOL believed that the statute of limitations period had expired prior to 2001, and that the only way the DOL would be able to bring this action in a timely manner would be by obtaining the opinion of an expert, and arguing to a court that it did not have sufficient knowledge of the alleged violations until

17

it received that expert opinion. The DOL's internal statute of limitations calculations are not binding on this court.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss the plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                              S/ Michael A. Telesca
                                      _____
                                           Michael A. Telesca
                                       United States District Judge

DATED:    Rochester, New York
             September 13, 2006